IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>v.<br><br>BRYAN C. PERRY,<br><br>          Defendant. | Case No.     22-04065-01-CR-C-BCW |

## UNITED STATES' SENTENCING MEMORANDUM

The United States of America, by and through R. Matthew Price, United States Attorney for the Western District of Missouri, and undersigned counsel, respectfully submits this sentencing memorandum in the above-captioned matter, set for a sentencing hearing on August 26, 2025. The defendant, Bryan C. Perry, faces sentencing after a jury found him guilty of charges related to his attempted murder of seven Federal Bureau of Investigation ("FBI") agents in furtherance of his conspiracy to travel to the United States – Mexico border, with co-defendant Jonathan S. O'Dell, to murder United States Border Patrol agents and immigrants. Specifically, the defendant O'Dell conspired to travel to the border to conduct such murders and committed numerous acts in furtherance of their conspiracies, including amassing firearms, ammunition, gas masks, zip ties, medical kits, and body armor, and attempting to recruit other individuals to participate in their plan. Then, when the FBI attempted to stop them before they traveled to the border, Perry donned his body armor and fired 11 shots from a stolen firearm at seven FBI agents, one of the shots striking an FBI armored vehicle just inches from the head of one of the agents.

For the reasons set forth below, and under the factors set out in 18 U.S.C. § 3553(a), the United States (also referred to herein as "the Government") respectfully recommends that this Court sentence the defendant to the following terms of imprisonment for each of his convictions:

| | |
|---|---|
| Count 1 – Conspiracy to Murder a Federal Officer and Employee (18 U.S.C. §§ 1117 & 1114) | Life |
| Count 2 – Conspiracy to Assault a Federal Officer and Employee (18 U.S.C. §§ 371 & 111(a)(1)) | Five years |
| Count 3 – Conspiracy to Injure an Officer (18 U.S.C. § 372) | Six years |
| Counts 4-10 – Attempted Murder of a Federal Officer and Employee (18 U.S.C. §§ 1114(a)(3), 1113 & 2) | 20 years |
| Counts 11-17 – Assault of a Federal Officer and Employee with a Deadly or Dangerous Weapon (18 U.S.C. §§ 111(a)(1), (b) & 2) | 20 years |
| Count 18 – Assault of a Federal Officer and Employee That Inflicts Bodily Injury (18 U.S.C. §§ 111(a)(1), (b) & 2) | 20 years |
| Counts 19-20 – Assault of a Federal Officer and Employee That Involves Physical Contact (18 U.S.C. §§ 111(a)(1) & 2) | Eight years |
| Counts 21-34 – Use of a Firearm in Furtherance of a Crime of Violence (18 U.S.C. §§ 924(c)(1)(A)(iii) & 2) | Life |
| Count 35 – Depredation of Government Property (18 U.S.C. §§ 1361 & 2) | 10 years |
| Count 36[1] – Felon in Possession of a Firearm (18 U.S.C. §§ 922(g)(1) & 924(a)(8)) | 15 years |

---

[1] As to Count 37, the United States intends to recommend at sentencing that it merge such count into Count 36, as, although each count was a viable and appropriate charge, the United States believes that each count is multiplicitous and should be merged into one count for purposes of sentencing. *See United States v. Kinsley*, 518 F.2d 665, 666-70 (8th Cir. 1975) (simultaneous possession of four firearms was a single offense under earlier felon in possession statute).

| | |
|---|---|
| Count 39 – Possession of Body Armor by a Violent Felon (18 U.S.C. §§ 931(a)(1) & 924(a)(7)) | Three years |
| Count 41 – Communicating a Threat to Injure (18 U.S.C. § 875(c)) | Five years |

The United States recommends that the sentences for each of the following convictions run concurrent to one another: Counts 1-3, 11-17, 35-36, 39, 41. The United States recommends that the sentence for each of the following convictions run consecutive to each other and to the concurrent counts listed above, pursuant to statute and to represent each individual federal victim of the defendants' attempted murders and other violent assaults: Counts 4-10 and 18-34. The United States recommends that each of these terms of imprisonment be followed by the statutory maximum amount of supervised release for each count, to run concurrent to one another. Further, the United States respectfully requests that the Court order the defendant to pay restitution in the amount of $3,717.98 to the FBI for the damage the defendant caused to the FBI armored vehicle during his attempted murders, joint and several with co-defendant O'Dell.

The United States' sentencing recommendation is sufficient but not greater than necessary to address the relevant factors represented in 18 U.S.C. § 3553(a). The actions of this domestic terrorist and aspiring mass murderer warrant imprisonment for the rest of his natural life.

## I. BACKGROUND

On October 7, 2022, the United States District Court for the Western District of Missouri issued a complaint charging the defendant with communicating a threat in interstate commerce, possession of a firearm as a convicted felon, and assault of an FBI special agent with a deadly or dangerous weapon. (D.E. 1.)[2]

---

[2] "D.E." refers to the docket entries of the instant criminal case, case number 22-04065-01/02-CR-C-BCW, and any associated documents.

3

On October 18, 2022, a grand jury seated in Jefferson City, Missouri, returned an indictment against Perry and O'Dell charging them with various firearms and threat crimes. (D.E. 16.) The grand jury also charged Perry with assault of a federal law enforcement officer, in violation of 18 U.S.C. § 111(a)(1) and (b), and use of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). (D.E. 16.)

The grand jury returned a superseding indictment on January 17, 2023, which added a forfeiture allegation to the charges from the initial indictment. (D.E. 28.) On May 30, 2023, the grand jury returned a second superseding indictment that added charges against each defendant, including conspiracy to murder a federal officer and employee, conspiracy to assault a federal officer and employee, conspiracy to injure an officer, attempted murder of a federal officer and employee, assault of a federal officer and employee with a deadly or dangerous weapon, assault of a federal officer and employee that inflicts bodily injury, assault of a federal officer and employee that involves physical contact, use of a firearm in furtherance of a crime of violence, and depredation of government property. (D.E. 34.) The grand jury also charged Perry with crimes involving firearms, body armor, explosives, and interstate communication of threats. (D.E. 34.) The grand jury further charged O'Dell with crimes involving interstate communication of threats, firearms, and making a false statement to the FBI. (D.E. 34.) The grand jury returned a third superseding indictment on October 24, 2023, that added an escape from custody charge against O'Dell. (D.E. 48.)

On October 28, 2024, O'Dell pleaded guilty to Counts 42, 44, and 45 of the Third Superseding Indictment, charging him with possession of a firearm while subject to a court order of protection, making a false statement, and escape from custody, respectively. (D.E. 134, 137.)

The United States dismissed Count 38 of the Third Superseding Indictment charging Perry with possession of a firearm with an obliterated serial number. (D.E. 128, 134.)

On November 7, 2024, a jury found each defendant guilty of all the remaining counts charged against them in the Third Superseding Indictment, except for one charge against Perry relating to possession of explosives, after a nine-day jury trial that included testimony from over 40 witnesses and the admission of over 400 exhibits. (D.E. 134-36, 139-44, 147.) Perry waived his right to forfeiture by jury, (D.E. 144), and the Court later entered a preliminary order of forfeiture against him, (D.E. 192).

On January 2, 2025, Perry filed a motion for new trial, (D.E. 162), which the United States responded in opposition to on May 9, 2025, (D.E. 199). The Court denied Perry's motion on July 25, 2025. (D.E. 208.)

The United States Probation Office ("USPO") submitted its draft presentence investigation report on February 21, 2025. Both the United States and the defendant submitted objections to the report which potentially affect the applicable Guidelines range. (PSR Adden.)[3] The United States Probation Officer filed the final presentence investigation report ("PSR") on April 30, 2025, in which he addressed these objections. (D.E. 196.) The sentencing hearing is scheduled for August 26, 2025. (D.E. 198.)

## II. FORMULATION OF THE DEFENDANT'S SENTENCE

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Sentencing Guidelines should be applied in an advisory fashion to meet constitutional demands. *Id.* at 258. While this Court is not bound to impose a sentence based solely on the Guidelines, the

---

[3] "PSR Adden." refers to the presentence investigation report addendum, filed on April 30, 2025.

Court "nevertheless must consult the Guidelines to calculate a defendant's sentence because the Guidelines are the critical starting point for fashioning a reasonable sentence [under the statutory sentencing factors]." *United States v. Gregg*, 467 F.3d 1126, 1128 (8th Cir. 2006) (internal quotation omitted). Pursuant to the Sentencing Guidelines, the Court "shall determine the kinds of sentencing and the guideline range as set forth in the guidelines by applying the provisions of this manual . . . ." U.S.S.G. §1B1.1(a). After considering the Sentencing Guidelines, the Court "shall then consider the applicable factors in 18 U.S.C. § 3553(a) taken as a whole." U.S.S.G. §1B1.1(c); *see also* 18 U.S.C. § 3553(a).

After making that determination, the district court, utilizing the § 3553(a) sentencing factors, can impose a more severe or more lenient sentence, as long as it is reasonable. *See Booker*, 543 U.S. at 263-65. The § 3553(a) factors relevant to this matter are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant . . . ; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established [under the Sentencing Guidelines]; . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Upon correctly calculating the Guidelines range, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of a sentencing set forth in 18 U.S.C. § 3553(a). *Id*. As explained below, the United States' sentencing recommendation satisfies the criteria set forth in § 3553(a) and is reasonable and just given the facts and circumstances of the case now before this Court.

## III. DISCUSSION

### A. Statutory and Guidelines Calculations

As a result of the defendant's convictions, his statutory maximum sentences for his various felonies are as follows: Count 1, Life imprisonment; Count 2, five years' imprisonment; Count 3, six years' imprisonment; Counts 4-10, 20 years' imprisonment; Counts 11-17, 20 years' imprisonment; Count 18, 20 years' imprisonment; Counts 19-20, eight years' imprisonment; Counts 21-34, Life imprisonment, consecutive to other counts; Count 35, 10 years' imprisonment; Count 36, 15 years' imprisonment; Count 39, three years' imprisonment; and Count 41, five years' imprisonment. (PSR ¶ 230.) The PSR assessed the defendant a criminal history score of seven and found that the defendant's criminal history category was "VI" due to the offense involving a federal crime of terrorism, and the total offense level was 43.[4] (PSR ¶¶ 169, 172, 184-85.) The PSR stated that the Court may impose a term of supervised release of not more than five years for Counts 1 and 21-34; not more than three years for Counts 2-20, 35-36, and 41; and not more than one year for Count 39. (PSR ¶¶ 234-36.) Based on the defendant's criminal history category of "VI" and a total offense level of 43, the PSR found a Guidelines imprisonment range of life, with the defendant ineligible for probation, and various Guidelines supervised release terms depending on the count. (PSR ¶¶ 232, 242-43.) The United States concurs with this assessment.

---

[4]The PSR actually calculated the defendant's offense level as 60; however, "[p]ursuant to Chapter 5, Part A (comment n.2), in those *rare* instances where the total offense level is calculated in excess of 43, the offense level will be treated as a level 43." (PSR ¶¶ 169, 172) (emphasis added).

B.  **Presentence Investigation Report Objections**

1.  ***The Court Should Deny the Defendant's Objections to the Presentence Investigation Report***.

The defendant raised objections to the PSR not affording him credit for acceptance of responsibility, for applying the federal crime of terrorism enhancement in U.S.S.G. §3A1.4, for attributing three or more firearms to the defendant in U.S.S.G. §2K2.1(b)(1), for applying the six-level enhancement from U.S.S.G. §3A1.2, and for applying a six-level enhancement due to his intent to carry out a threat under U.S.S.G. §2A6.1(b)(1). (PSR Adden.) The United States concurs with the Probation Officer's response to each of these objections, as the trial evidence and statutory crimes support the positions of the USPO. Accordingly, the United States respectfully requests that the Court deny the defendant's PSR objections.

Regarding the defendant's assertion that he is due credit for acceptance of responsibility under U.S.S.G. §3E1.1, the United States adds that the defendant did not clearly demonstrate acceptance of responsibility for the offenses. The defendant contested the ultimate issue of his commission of the charged offenses. He has never truthfully admitted the conduct comprising the offenses of conviction, nor has he truthfully admitted the relevant conduct that he is accountable for. *See* U.S.S.G. §3E1.1, n. 1(A). Indeed, through his presentence investigation report objections, he appears to be "frivolously" contesting facts and relevant conduct that the jury has already determined to be true through their verdicts. *Id*. Notably, application note 2 to §3E1.1 states, "This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." This defendant has not even admitted guilt or expressed remorse after his findings of guilt and the Court should deny this objection.

## C. Statutory Sentencing Factors

### 1. *The Defendant Conspired to Commit Mass Murder of Federal Law Enforcement Officers and Immigrants, and Attempted to Murder Other Federal Law Enforcement Officers Who Tried to Stop Him.*

The United States' recommended sentence appropriately reflects "[t]he nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). "In fashioning a 'sentence sufficient, but not greater than necessary,' 18 U.S.C. § 3553(a), 'district courts are not only permitted, but required, to consider the history and characteristics of the defendant.'" *United States v. Chase*, 560 F.3d 828, 830 (8th Cir. 2009) (quoting *United States v. White*, 506 F.3d 635, 644 (8th Cir. 2007)).

Paragraphs 12 through 57 of the PSR and the trial evidence detailed the facts and circumstances of this case. (PSR ¶¶ 12-57; D.E. 134-136, 139-144, 148-149.) The defendant and his co-defendant created a plan to travel to the border to murder Border Patrol agents and immigrants. As a part of that plan, they accumulated firearms, numerous rounds of ammunition, body armor, ballistic helmets, gas masks, first aid kits, zip ties, and other provisions. The defendant obtained two firearms by stealing them from his mother and his girlfriend, respectively. When the defendant stole the firearm from his girlfriend, he pointed a firearm at her children and talked about suicide. The defendants later attempted to obtain other supplies through other individuals, including night vision goggles. They attempted to recruit other individuals into their plans through phone calls and TikTok communications, including by advertising recruitment events and discussing dates of departure. They even planned to accumulate other supplies through murdering Border Patrol agents at the border and picking up those agents' items off their dead bodies.

9

In advance of, and as a part of, this plan, Perry discussed with several individuals and through online communications his desire to murder law enforcement officers, including Border Patrol agents and FBI agents. He even fantasized about killing FBI agents if they showed up at his doorstep. And that is exactly what he attempted to do when the FBI executed a search warrant on O'Dell's residence while Perry was residing there on October 7, 2022. After the FBI announced their presence and that they were executing a search warrant, Perry donned his body armor, picked up the Voodoo Innovations rifle he stole from his ex-girlfriend, and fired 11 rounds at FBI agents. Several of these rounds hit the armored FBI Bearcat; one of those rounds narrowly missed an agent's head. The defendant then acted as though he was going to surrender to authorities before running back towards the house where his firearms were located and then fighting three of the agents who attempted to take him into custody. The defendant landed at least one punch on one agent that caused physical injury to that agent's face. He fought until the very end to effect his and his co-conspirator's plan.

As exhibited by the trial evidence and the PSR, these two domestic terrorists conspired to commit mass murder of federal law enforcement officers and immigrants, and attempted to murder additional federal law enforcement officers when their plan was thwarted. Their plans presented great danger to the community, which was only alleviated due to the fantastic investigative work by the FBI in advance of the defendants' departure for the border. Indeed, the FBI prevented a mass murder event.

The PSR reported that the defendant was primarily raised by his mother in Clarksville, Tennessee. (PSR ¶¶ 193-94.) The defendant reported that his father suffered from drug addiction and was not involved in his life from the time the defendant was an infant. (PSR ¶ 193.) The defendant's mother sent him to a juvenile detention center for a few months when he was 15 years

old due to behavioral issues. (PSR ¶ 193.) The defendant maintains regular contact with his mother. (PSR ¶ 194.) The defendant has been married twice, with each ending in divorce. (PSR ¶¶ 196-97.) He does not have any children. (PSR ¶ 198.) The trial evidence showed that he was a founding member of the 2nd American Militia, an anti-government group. (PSR ¶¶ 201-02.)

The defendant may be diabetic, and his mother stated that he was diagnosed with a "valvular heart disease" when he was six months old. (PSR ¶¶ 203-04.) He has not been diagnosed with any mental health issues, and he does not have a history of substance abuse. (PSR ¶¶ 209-16.)

The defendant received his general equivalency diploma in 2007 while in the Tennessee Department of Corrections and attended some college. (PSR ¶¶ 218-19.) He has past employment in construction and reported experience as a "craftsman/skilled tradesman." (PSR ¶¶ 220-23.)

The trial evidence and the defendant's criminal history show that he is a uniquely violent individual. The defendant was convicted of the felony of aggravated robbery at the age of 18, when he used a firearm to rob a gas station. (PSR ¶ 175.) The defendant received a sentence of seven years' imprisonment for that offense. (PSR ¶ 175.) He also has misdemeanor convictions for domestic assault (two), simple assault, harassment, and contempt of court (three). (PSR ¶¶ 176-82.) The defendant's simple assault conviction resulted from him pulling a knife and threatening his girlfriend. (PSR ¶ 180.) The defendant's contempt of court convictions resulted from him violating bond conditions related to his domestic assault charges. (PSR ¶¶ 177-79.) For these misdemeanor offenses, the defendant received sentences ranging from ten days in jail to 11 months in jail. (PSR ¶¶ 177-82.)

Even after the arrest of the defendant in this case, he continued to commit crimes while in custody. He has pending state felony charges for possession of a weapon at a jail and damage to

11

Case 2:22-cr-04065-BCW   Document 214   Filed 08/15/25   Page 11 of 17

jail property, which resulted from him breaking a mop handle over his knee during an argument. (PSR ¶ 189.) He has another pending state felony charge for damage to jail property after he threatened jail staff and broke a sprinkler head in his jail cell, which caused flooding to parts of the jail. (PSR ¶ 190.) During a search of his jail cell after the event, jail staff discovered writings related to an escape plan. (PSR ¶ 190.) Overall, the defendant incurred 14 major incidents while in jail awaiting trial on the instant offenses, including fighting with three other inmates. (PSR ¶ 7.)

The Guidelines range in this case is life imprisonment, and that is based on a total offense level that is 17 points less than his actual offense level. In other words, the defendant's offense level is 17 points over the maximum offense level contemplated by the United States Sentencing Guidelines. Due to this, as well as the fact that the defendant conspired to murder uncountable numbers of federal officers at the border and then attempted to murder seven FBI agents at O'Dell's residence, the United States respectfully requests consecutive life sentences for the conspiracy to murder a federal officer conviction and the use of a firearm in furtherance of a crime of violence convictions. The United States also requests consecutive statutory maximum sentences for each attempted murder conviction and each assault of a federal officer conviction, to represent each victim of each offense.

In making its recommendation, the United States has taken into consideration the instant offenses, the risk his conduct presented to the community and to federal law enforcement officers, and his violent criminal history. Accordingly, the United States believes consecutive life sentences are appropriate in light of all of these considerations.

> 2. **_The Need to Reflect the Seriousness of the Offenses, to Promote Respect for the Law, and to Provide Just Punishment for the Offenses._**

The recommended sentence also "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

Such considerations reflect the need for retribution, the need to make the punishment fit the crime, and the need not just to punish, but to punish justly.

In this case, the seriousness of the defendant's crimes is reflected in the actions described above, as well as in the applicable statutes and the Sentencing Guidelines. The defendant conspired to murder Border Patrol agents and immigrants and then attempted to murder seven FBI agents when they attempted to stop him and his co-conspirator from executing their plan. He then resisted arrest and punched an agent in the face, causing injury. The only reason the defendant and his co-defendant failed in executing their plan was because of the urgent investigative work by the FBI in thwarting their plan.

His convictions for conspiracy to murder federal officers and use of a firearm in furtherance of a crime of violence each subject him to a maximum sentence of life imprisonment, with his convictions for the latter charges further subjecting him to consecutive terms of imprisonment. 18 U.S.C. §§ 1117 & 1114; 18 U.S.C. §§ 924(C)(1)(A)(iii). His convictions for attempted murder of federal officers and assault of a federal officer that inflicts bodily injury each subject him to a 20-year sentence. 18 U.S.C. §§ 1114(a)(3) & 1113. The defendant's convictions for the remaining charges subject him to maximum terms of imprisonment of three years to 15 years.

The seriousness of the defendant's crimes cannot be understated. His convictions for attempted murder of the seven FBI agents are classified as "Federal crime[s] of terrorism" under 18 U.S.C. § 2332b(5), which leads to a 12-level enhancement of his offense level and an increase in his criminal history category to VI. And, although these Guidelines enhancements appropriately reflect the seriousness of the defendant's crimes, even if this 12-level enhancement had not been applied, the defendant would still be over the 43-point maximum offense level that the Guidelines contemplates. Further, even if the 12-level enhancement had not been applied and his criminal

13

history category had not been increased under this provision, the defendant's applicable Guidelines range would still be life imprisonment. Essentially, the defendant's crimes and criminal history led to the maximum Guidelines range *before* assessing the fact that he committed crimes of terrorism.

The defendant's conduct was extremely dangerous, and he intended to murder as many people as possible over an unlimited amount of time. He was prepared to engage in a suicide mission to execute his sinister plan. His actions in this case and through his past, violent criminal conduct constitute a long-held lack of respect for the law. His past bond condition violations further exhibit his disrespect for the law and disregard of past Court orders. The United States' recommendation accounts for the need to promote such respect for the law, reflects the seriousness of the offenses, and provides punishment that is sufficient, but not greater than necessary. All these considerations exhibit the need to imprison the defendant for the rest of his natural life. The alternative creates too much risk for the safety of the citizens of the United States.

### 3. *Need to Afford Adequate Deterrence to Criminal Conduct*

Consecutive sentences of life imprisonment would also "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). The United States asserts that serious crimes demand a strong and clear message that will not only deter others but will also deter the specific defendant. This defendant has not been deterred by earlier convictions and their resulting custodial sentences, including the seven-year sentence he received for his aggravated robbery conviction. The trial evidence showed that the defendant knew that federal officers would, at some point, attempt to stop him from killing other federal officers. Rather than contemplate surrendering to authorities, he only thought about the fact that he would be killed in executing his and O'Dell's

plan. Even the concept of death did not deter him. Any sentence less than life imprisonment will undermine the need for specific deterrence.

Additionally, a lenient sentence will undermine the need for general deterrence of others who may be thinking of committing similar crimes. The alarming nature of these crimes presents great risk to federal officers. Consecutive sentences of life imprisonment are essential to protect federal officers by sending a message to others who may be contemplating murdering federal officers or other government employees that such acts will lead to severe consequences.

### 4. *The Need to Protect the Public from Further Crimes of the Defendant*

"Adequate protection is a function of two variables: the level of risk that conduct will occur and the level of harm that will be inflicted if that conduct does occur." *United States v. Irey*, 612 F.3d 1160, 1217 (11th Cir. 2010) (citing *United States v. Boyd*, 475 F.3d 875, 877-78 (7th Cir. 2007)). There is a very high risk that the defendant will continue his violent conduct if he is ever released from prison and that future violent conduct will create great harm to the community. Given the violent nature of the defendant's instant actions and his past violent conduct, there is a definitive need to protect the public from future violent, criminal activity by this defendant. Only life imprisonment mitigates that risk of future harm.

### 5. *Need to Avoid Unwarranted Sentence Disparity Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct*

Consecutive sentences of life imprisonment would "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). From the outset, a correct calculation of the Guidelines range protects against *unwarranted* disparities among *similarly situated* defendants. *See Gall v. United States*, 552 U.S. 38, 55 (2007) ("avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges"). Even though the defendant's conduct is

15

underrepresented in the offense level of the Guidelines calculations, that and his criminal history max out the Sentencing Table of the United States Sentencing Guidelines. His calculations are at the bottom right of the Sentencing Table. Consecutive terms of life imprisonment is the only sentence that is consistent with those with similar criminal history and conduct.

### 6. *Need to Provide Restitution to Any Victims of the Offense*

The defendant's sentence also requires restitution to the FBI for the damage to the Bearcat from the defendant shooting at the FBI agents. The trial evidence showed that the defendant caused $3,717.98 of damage to the FBI Bearcat. (PSR ¶ 248.) A sentence including an order of restitution for this amount to be paid by the defendant will account for this need to provide restitution to one of the victims of his offenses and would also reflect the seriousness of the offenses and provide just punishment for the defendant's actions. The United States recommends that the Court order that this restitution obligation be made joint and several with O'Dell.

## IV. CONCLUSION

Bryan Perry's actions in this case and his criminal history require a sentence of consecutive life terms of imprisonment. Ultimately, this Court should impose a sentence that considers a variety of factors, including those listed in 18 U.S.C. § 3553 and the advisory Guidelines range. The United States respectfully requests that the nature of these offenses, the numerous victims of the defendant's offenses, the his criminal history, the need to reflect the seriousness of the offenses, the need to promote respect for the law, the need to provide general and specific deterrence to these types of crimes, and any other statutory sentencing factors be considered in reaching an appropriate sentence.

Therefore, the United States respectfully requests that this Court impose an aggregate sentence of consecutive lifetime terms of imprisonment, consistent with its specific requests in the

chart on page 2 and its requests regarding concurrent and consecutive terms on page 3 of this memorandum. The United States further requests that the Court order the defendant to pay restitution in the amount of $3,717.98 to the Federal Bureau of Investigation. Such a sentence would be consistent with the circumstances of this case.

Respectfully submitted,

R. MATTHEW PRICE
United States Attorney

*/s/ Casey Clark*
Casey Clark

*/s/ Ashley S. Turner*
Ashley S. Turner

Assistant United States Attorneys
Western District of Missouri
901 St. Louis Street, Suite 500
Springfield, Missouri 65806
(417) 831-4406

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 15th day of August 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent e-mail notification of such filing to all CM/ECF participants in this case.

*/s/ Casey Clark*
Casey Clark
Assistant United States Attorney