IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| ) | Case No.: 22-cr-04065-BCW-1 |
| v. ) | |
| ) | |
| BRYAN PERRY, ) | |
| Defendant ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

COMES NOW Bryan Perry, defendant in the above referenced cause, by and through the undersigned attorney, and hereby respectfully moves this Honorable Court to impose a sentence of 240 months with five years of supervised release and in support the defendant submits the following sentencing memorandum for this Court's consideration.

**I.   APPLICATION OF SENTENCING FACTORS**

This Court must impose a sentence that is sufficient, but no greater than necessary, to effectuate the purposes of 18 U.S.C. § 3553(a)(2). Because a sentence beyond 240 months in the Bureau of Prisons is greater than necessary to effectuate those purposes, Mr. Perry submits that 240 months is appropriate in this case.

**A.   The nature and circumstances of the offenses.**

18 U.S.C. § 3553(a)(1) requires consideration of both the current offense and past conduct and characteristics of the defendant. Mr. Perry's convictions on the instant offenses and his history demand substantial punishment. However, confining Mr. Perry for the remainder of his life is far greater than necessary to justly punish and deter him.

The nature and circumstances of the offenses here are inexcusable, yet this is not one of those rare cases that demands a life sentence. The most recent report from the United States Sentencing Commission regarding life sentences includes sentencing data from fiscal years 2016-2021. U.S. Sentencing Comm'n, *Life Sentences in the Federal System* (2022). During that period, only 709 offenders were sentenced to life imprisonment. *Id*. at 2. Only 60 life sentences were imposed in 2021. *Id*. at 5. From 2016-2021, nearly half the life sentences imposed were required

by the statute of conviction, with almost 60% of such offenders convicted of murder, and over 25% convicted of drug trafficking. *Id*. at 14.

The nature and circumstances of the offenses do not warrant the remainder of Mr. Perry's life. The conspiracy for which Mr. Perry has been convicted does indeed sound gruesome, and the United States accurately recounts some of the evidence adduced at trial in its memorandum. What should not be forgotten from trial, however, is the utter inanity of Messers. Perry and O'Dell's previous conspiracies, if their fantasies are even worthy of the title. So unmoved by the 2nd American Militia's purported dates of departure were federal investigators that not a single agent was present at the alleged rendezvous and departure point. The federal government knew the "plan" was to leave from Country Mart across from Dollar General in Warsaw, Missouri on a date and time certain, yet the investigation was concluded upon the defendants' arrests. This, all before investigators discovered the current iteration was but another outlandish contrivance that was never to be consummated. The agents' confidence that there was no rendezvous, that there was no departure, was verified. Ought Mr. Perry be confined? Yes. For the remainder of his natural life? No.

The nature and circumstances of Mr. Perry's attempted murder convictions are likewise deplorable but again do not warrant a life sentence. As discussed in Mr. Perry's objections below, these attempted murder convictions are not the result of calculating an act of terror on agents because of their status as federal agents. They are also not the result of planning intended targets of assassination in which a defendant specifically intends the death of particular individuals. The recklessness and vigilantism found by the jury has no place in our ordered society, but nor does executing sentences far beyond that which is necessary to righteously punish wrongdoers.

While conceding the nature of the offenses requires significant punishment, Mr. Perry submits these are not the exceedingly rare circumstances that call for a sentence of the remainder of his natural life.

### B. Mr. Perry's history and characteristics.

Mr. Perry is not an educated man. ¶¶ 217-18. His father was an absent drug addict, ¶ 193, and his behavioral issues as a child led him to a juvenile detention center by the age of 15. *Id*. Perry is susceptible to political ideologies divorced from reality. ¶ 200. Mr. Perry was raised primarily by his mother who testified on his behalf at trial and remains supportive of him to this day. His mother is an accomplished professional in the field of addiction and mental health counseling. ¶

194. Nonetheless, Mr. Perry does have a criminal history that would normally render his criminal history score a 7 resulting in a criminal history category 4. Mr. Perry recognizes the severity of his history, and that it is an important factor for the Court to consider, but it is not so wretched that he should be seen as incapable of redemption and good.

  C. **A term of 240 months satisfies the purposes of 18 U.S.C. § 3553(a)(2)(A) because it is an adequate punishment and further confinement would be greater than necessary.**

  18 U.S.C. § 3553(a)(2)(A) requires consideration of the need for the sentence in this matter to reflect the seriousness of the offense, the promotion of the respect for the law, and the provision of a just punishment for the offense. A term of 240 months satisfies these concerns in a myriad of ways. 240 months is a considerable period of confinement which adequately reflects the seriousness of this offense.

  240 months also promotes respect for the law. Because it is a considerable period of time that reflects the seriousness of this offense, 240 months promotes respect for the law in that no reasonable onlooker could conclude that the law and the Courts do not take matters such as this seriously. Mr. Perry is nearing forty years old. 240 months confinement followed by five years of supervised release will render him at least sixty-five years old before he concludes his obligations to this Court. This is a clear indication that misdeeds like these will be effectively and justly punished.

  240 months is just for similar reasons. Just punishment is more than retribution; it is punishment that is adequate, but no greater than necessary to effectuate the overarching goals of sentencing. 240 months followed by supervised release is a severe punishment. It is just because it is proportionate, and not merely retaliatory.

  D. **A term of 240 months adequately deters criminal conduct and protects the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(B),(C).**

  240 months followed by supervised release is adequate to deter criminal conduct. A total of twenty-five years confinement and supervision consuming most of a man's adult life is adequate to deter criminal conduct. Twenty years confinement is a lengthy enough prison term that there is no reason to believe the sixty-five-year-old man that will finally finish the sentence will be the same man that is before the Court now, let alone a danger.

## II. OBJECTIONS

Mr. Perry raises the following objections to the guideline calculation found in the PSIR.

**A. Mr. Perry objects to a higher guideline calculation based on the exercise of his right to trial by jury. ¶¶ 68, 69, 171.**

Counsel owes a duty of candor to this Court and Mr. Perry recognizes that the application of §3E1.1 has been found compliant with the Fifth and Sixth Amendments; Mr. Perry nonetheless respectfully suggests it is not.

The government's response to Mr. Perry's objection, at p. 8 of its sentencing memorandum, illustrates the point. While the government aptly cites the guidelines and the Sentencing Commission's application notes, the reply is that Mr. Perry exercised his fundamental right to put the government to its burden of proof instead of admitting guilt, but see, U.S. Const. Art. III, Section 2,

> "The Trial of all Crimes, except in Cases of Impeachment; shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed,"

And, the Sixth Amendment,

> "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed…"

In finding a mandatory supervised release sentence violative of the Sixth Amendment because it was based on judicial fact finding instead of a jury, the United States Supreme Court opined,

> "[t]ogether with the right to vote, those who wrote our Constitution considered the right to trial by jury 'the heart and lungs, the mainspring and the center wheel' of our liberties, without which 'the body must die; the watch must run down; the government must become arbitrary.'" *U.S. v. Haymond*, 588 U.S. 634, 640–41, (2019) (citing Letter from Clarendon to W. Pym (Jan. 27, 1766), in 1 Papers of John Adams 169 (R. Taylor ed. 1977).

In similar vein, troubled by his concern that the revolutionaries in France would not adopt trial by jury, Thomas Jefferson wrote to Thomas Paine in 1789 that,

> "Another apprehension is that a majority cannot be induced to adopt the trial by jury; and I consider that as the only anchor, ever yet imagined by man, by which a government can be held to the principles of its constitution."[1]

The history and veneration of the right to trial by jury in this country informs us that a defendant should not be punished for exercising the right; Mr. Perry objects.

### B. Mr. Perry objects to enhancements pursuant to §3A1.4(a) in Count Groups 2-8

§3A1.4(a) increases an offense level by 12 if the offense is a felony that involved, or was intended to promote, federal crimes of terrorism. Application Note 1 to §3A1.4(a) applies the definition of "federal crimes of terrorism" found in 18 U.S.C. § 2332b(g)(5), which is, as relevant here, a violation of 18 U.S.C. § 1114 that "is calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct."

Groups 2-8 relate to the events of October 7, 2022, for which Mr. Perry was convicted of multiple counts of attempted murder of a federal officer for firing upon agents as they approached his home to execute warrants. As appalling as the conduct for which he was convicted may be, these convictions are distinct from those that are subject to the terrorism enhancement because the conduct was not "calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct."

In discussing the specific intent contemplated by 18 U.S.C. § 2332b(g)(5), the Eighth Circuit has stated "[c]alculation is concerned with the object that the actor seeks to achieve through planning or contrivance," *U.S. v. Mohamed*, 757 F.3d 757, 760 (8th Cir. 2014) (internal citations omitted). § 2332b(g)(5) "does not focus on the defendant but on his 'offense,' asking whether it was calculated, i.e., planned—for whatever reason or motive—to achieve the stated object." *Id*.

Applying this reasoning to these count groups, the enhancement does not apply because these offenses were not calculated to affect government in the sense contemplated by § 2332b(g)(5).

---

[1] Thomas Jefferson to Thomas Paine, 11 July 1789, *Founders Online,* National Archives, https://founders.archives.gov/documents/Jefferson/01-15-02-0259. Retrieved August 16 (Original source: *The Papers of Thomas Jefferson*, vol. 15, *27 March 1789–30 November 1789*, ed. Julian P. Boyd. Princeton: Princeton University Press, 1958, pp. 266–270).

C.  **Mr. Perry objects to the six-level enhancement applied to Count 19, assault of a federal officer involving physical contact, §3A1.2(b), ¶ 150.**

Mr. Perry's initial objection to a six-level enhancement on different grounds was well taken and the PSIR was updated to reflect a six-level enhancement pursuant to §3A1.2(b). §3A1.2(b) applies when the offense conduct guidelines are from Chapter Two, Part A (offenses against the person) and, 1) the victim was a government agent or employee and, 2) *the offense conduct was motivated by such status* (emphasis added). Mr. Perry's actions were not motivated by the agent's status as a government agent or employee.

The offense conduct relevant to this objection is described at ¶ 41,

"Agents continued to call the defendant out of the house and deploy flashbangs. Subsequently, the defendant exited the residence initially on the phone. He then grabbed the American flag off the front porch, and yelled that he was a "fucking patriot," and then started walking towards the rear of the Bearcat, following FBI commands. However, the defendant then stopped complying with FBI commands, turned around and began moving back toward the house. The defendant stated he "wasn't going out like that." Agents [J.R.], [J.A.], and [R.G] pursued the defendant and took him to the ground. The defendant began to fight and wing his fists, striking the agents several times, while refusing to be handcuffed. Through those actions, the defendant caused a cut to [J.R.]'s nose. Agents [J.A.] and [R.G.] were not injured during the apprehension."

The evidence establishes assaultive physical contact while resisting arrest, not an offense against a person *because they are* a government agent. This reading of the enhancement is supported by §3A1.2 Application Note 3 which defines "motivated by such status" as "motivated by the fact that the victim was a government officer or employee, or a member of the immediate family thereof." The inclusion of agents' and employees' family members in the meaning of "motivated by such status" informs us that the enhancement applies to those crimes in which individuals are targeted for violence because of their employment or relationship to an employee. Applying it here would render every instance of physical contact during resistance or impediment to arrest subject to the enhancement.

D.  **Mr. Perry objects to the six-level enhancement applied to Count 41, communicating a threat to injure, pursuant to §2A6.1(b)(1), ¶ 160.**

§2A6.1(b)(1) is a six-level enhancement to threatening or harassing communications, "if

the offense involved any conduct evidencing an intent to carry out such threat." "In determining whether subsections (b)(1), (b)(2), and (b)(3) apply, the court shall consider both conduct that occurred prior to the offense and conduct that occurred during the offense; however, conduct that occurred prior to the offense must be substantially and directly connected to the offense, under the facts of the case taken as a whole." §2A6.1(b)(1), Application Note 1.

The offense at issue is a threat Mr. Perry directed at no one in particular. No one who was ostensibly threatened heard the threat and nothing about the offense itself involved conduct evidencing an intent to carry it out. In fact, the Court and jury heard evidence of several prior would-be "threats" that were equally fatuous, one was described by the case agent as, "silly."

E. **The government's objections.**

Mr. Perry agrees with the Probation Office's responses to the United States' objections, apart from the enhanced criminal history category pursuant to §3A1.4, which is addressed above.

**OBJECTIONS THAT DO NOT AFFECT THE GUIDELINE RANGE**

Having persisted in his not-guilty plea, Mr. Perry maintains his general denial of the facts alleged. Mr. Perry specifically objects to ¶ 17 of the PSIR and vehemently denies stealing the rifle in question and pointing a firearm at children.

### III.   CONCLUSION

WHEREFORE, Bryan Perry respectfully moves this Court to impose a sentence of 240 months followed by five years of supervised release, and for any and all other relief this Court deems just and proper.

RESPECTFULLY SUBMITTED:

/s/ TJ Kirsch
T.J. Kirsch Mo. Bar No. 66007
Attorney for the Defendant
Kirsch & Kirsch, LLC
214 E. McCarty St.
Jefferson City Missouri, 65101
tj@kk-attorneys.com
(573) 222-0826

**Certificate of Service**

I hereby certify that on this day, August 19, 2025, an electronic copy of the foregoing was sent through the CM-ECF system of the United States District Court for the Western District of Missouri to counsel of record.

/s/ TJ Kirsch
TJ Kirsch